## Mae Silver *vs.* Benjamin Silver.

Third Judicial District, New Haven, June Term, 1928.

Wheeler, C. J., Maltbie, Haines, Hinman and Banks, Js.

Argued June 12th—decided September 28th, 1928.

*David M. Reilly* and *Herman Levine,* for the appellant (plaintiff).

*William L. Hadden* and *Ellsworth B. Foote,* with whom, on the brief, was *David E. FitzGerald,* for the appellee (defendant).

BANKS, J.   The jury could reasonably have found the following facts: The plaintiff is the wife of the defendant and upon his invitation was a passenger in an automobile operated by him.   There was considerable traffic upon the road in both directions and the defendant was driving in the line of traffic behind a number of other cars at a speed of between fifteen and twenty miles an hour.   His son was in the rear seat of the car and called out, "Oh, daddy, look at the horses," at the same time pointing to some horses that were being ridden in a vacant lot upon the right side of the road.   The defendant turned and looked to the right and immediately crashed into a car which had been proceeding about fifteen feet in front of him, as a result of which the plaintiff received the injuries for which she seeks to recover.   The defendant was called as a witness by the plaintiff and testified on her behalf. There was no conflict between the evidence of the plaintiff and that of the defendant as to how the accident happened and their evidence was the only evidence in the case as to the conduct of the defendant.

At the close of the plaintiff's case the court directed a verdict in favor of the defendant upon two grounds: (1) that the plaintiff had failed to prove that the act of the defendant in inadvertently looking to the right was the proximate cause of her injuries, and (2) that the collision was not caused by the defendant's "heedlessness or his reckless disregard of the rights of others." The only evidence as to the operation of the cars in front of defendant's car was that of the occupant of the third car ahead of his car that the traffic had stopped and her car was standing still when it was struck from the rear. Upon the evidence before it we think the jury might reasonably have reached the conclusion that the act of the defendant in looking to the right was the proximate cause of the collision and that the court was not justified in directing a verdict for the defendant upon the first ground stated. Its direction of a verdict for the defendant upon the second ground stated was based upon the court's construction and application to the facts of this case, of the provisions of Chapter 308 of the Public Acts of 1927, which is entitled: "An Act Releasing Owners of Motor Vehicles from Responsibility for injuries to Passengers therein." Section 1 of the Act reads as follows: "No person transported by the owner or operator of a motor vehicle as his guest without payment for such transportation shall have a cause of action for damages against such owner or operator for injury, death or loss, in case of accident, unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." That a wife riding in her husband's car at his invitation is a guest within the meaning of the statute is not questioned by the defendant. We had held, in line with the weight of authority elsewhere, that the owner of an automobile who invites a

guest to ride with him, is bound to exercise ordinary or reasonable care in the operation of the vehicle, and is liable to the guest who is injured as a result of his failure in this duty. *Dickerson* v. *Connecticut Co.*, 98 Conn. 87, 118 Atl. 518. The statute which we have quoted relieves the owner or operator of such vehicle from any liability to a guest for damages resulting from its operation unless the accident causing them was "intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." It is the contention of the plaintiff that the statute effects no change in the lia-. bility of the owner or operator to his guests, and that the former is still liable if the accident is caused by his "heedlessness" which the plaintiff claims is the equivalent in meaning of carelessness or negligence. She further claims that, if the statute should be construed as exempting from liability for ordinary negligence, it would then be unconstitutional because it is an unjust discrimination between persons of the same class. The word "heedlessness" signifies a failure to take heed and is a synonym of carelessness. Standing by itself it connotes a lack of care substantially identical with that indicated by the word negligence. The question for our consideration, however, is not the meaning of a single word in an abstract sense, but its meaning with due regard to its context and the meaning of the entire phrase or sentence in which it appears. We must assume that the legislature was familiar with the decisions of this court permitting a recovery by a guest in an automobile for injuries resulting from the negligence of the owner or operator, and that when it undertook to legislate upon that subject it was with the purpose of making some change in the existing law. *Stamford* v. *Stamford*, 107 Conn. 596, 606, 141 Atl. 891, 895. Such purpose is pretty clearly

indicated in the title of the Act and in the first clause of the first section which provides that no guest shall have a cause of action against the owner or operator of the car in case of accident. Then follows a statement of the exceptions to the general rule—"unless such accident shall have been intentional on the part of said owner or operator or caused by his heedlessness or his reckless disregard of the rights of others." If the phrase "or caused by his heedlessness" is to be taken as strictly disjunctive as by itself constituting an exception to the general rule of nonliability, and "heedlessness" is held to be synonymous with "negligence," the entire statute is nugatory and effects no change whatever in the law as it existed before its enactment. We do not think that is a sensible construction of the statute. It would utterly fail to effectuate the obvious purpose of the legislature in some way to limit the liability of the owner or operator of a motor vehicle to one who was riding in it as his guest. The language of the statute indicates an intention to limit such liability to two classes of cases, first, when the accident was caused by intentional misconduct, and second, when it was caused by heedless or reckless disregard of the rights of others, meaning thereby something more than the mere failure to exercise the care of a reasonably prudent man which is the familiar definition of negligence.

The plaintiff contends that the statute, if thus construed, denies to guests in motor vehicles the equal protection of the laws and therefore violates constitutional guaranties. Legislation under the police power of the States is not confined to public health, safety or morality, but may extend to matters in the interest of the public welfare or convenience. *State* v. *Bassett*, 100 Conn. 430, 123 Atl. 842. "A large discretion is necessarily vested in the legislature to determine not only what the interests of public convenience and wel-

fare require, but what measures are necessary to secure such interests. *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248; *Young* v. *Lemieux,* 79 Conn. 434, 440, 65 Atl. 436, 600. The legislative department is the judge, within reasonable limits, to determine what public convenience and public welfare require, and the wisdom of its legislation is not the concern of the courts. It is our duty to sustain an Act unless its invalidity is in our judgment beyond a reasonable doubt. *Beach* v. *Bradstreet,* 85 Conn. 344, 82 Atl. 1030; *State* v. *Lay,* 86 Conn. 141, 145, 84 Atl. 522; *Cooper* v. *Telfair,* 4 U. S. (4 Dall.) 14, 19." *State* v. *Bassett, supra,* p. 432. That the State may under the police power regulate travel upon the public highways cannot be doubted. *Jones* v. *Brim,* 165 U. S. 180, 182, 17 Sup. Ct. 282. This includes the power to regulate the use of motor vehicles. *Commonwealth* v. *Boyd,* 188 Mass. 79, 74 N. E. 255. "That the regulation of motor vehicles and motor vehicle traffic is a proper subject for legislative action under the police power is not questioned." *Cotter* v. *Stoeckel,* 97 Conn. 239, 244, 116 Atl. 248. Ever since motor vehicles have come into general use they have been classified separately from horse-drawn vehicles and the power of the legislature to impose upon their owners and operators duties not placed upon others has been generally upheld. *Westfalls Storage V. & E. Co.* v. *Chicago,* 280 Ill. 318, 117 N. E. 439; *Garrett* v. *Turner,* 235 Pa. St. 383, 84 Atl. 354; Berry on Automobiles (5th Ed.) §30, and cases cited. The plaintiff's contention is that the statute makes an unreasonable classification between the guest in an automobile and the guest in any other mode of conveyance or in any other place, thus depriving him of the equal protection of the law. Assuming, as we must, the power of the legislature to regulate the operation of motor vehicles, that includes the power to enact legis-

lation affecting the reciprocal rights and duties of all who use them, owners, operators or occupants, when these rights and duties arise out of such operation. The duty which the owner or operator owes to his guest in the operation of the automobile being a legitimate subject-matter of legislation, the guest is not deprived of the equal protection of the law because that duty is made to vary from that owed to a house guest or a guest in some other mode of conveyance. The basis of the classification is the automobile, and the Act affects alike all those who may elect to be transported in it as guests of its owner or operator. This classification is within the wide range of discretion which the legislature has, since it has a fair and substantial relation to the object of the legislation, which is the control or regulation of automobile traffic upon our public highways. *Royster Guano Co.* v. *Virginia,* 253 U. S. 412, 415, 40 Sup. Ct. 560; *Walp* v. *Mooar,* 76 Conn. 515, 521, 57 Atl. 277. Primarily the question of classification is for the legislature and the courts will not interfere unless the classification is clearly unreasonable. *People* v. *Sisk,* 297 Ill. 314, 130 N. E. 696. "A statute does not constitute a denial of the equal protection of the laws merely because it extends to some persons privileges denied to others, or imposes restrictions or liabilities on some but not on others. Such discriminations render legislation void where they are arbitrary or unreasonable, but not where they are based on real differences in the subject-matter and are reasonable in extent." 12 Corpus Juris, 1159; *Patsone* v. *Pennsylvania,* 232 U. S. 138, 144, 34 Sup. Ct. 281; *Vigeant* v. *Postal Telegraph Cable Co.,* 260 Mass. 335, 157 N. E. 651, 53 A.L.R. 867.

The statute imposes upon the owner or operator of a motor vehicle a different degree of care toward a guest than he is required at common law to exercise

toward a passenger who pays for his transportation. Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of the law, as, for example, between the gratuitous bailee and the bailee for hire, the common carrier and the private driver, the innkeeper and the ordinary social host. In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. *Massaletti* v. *Fitzroy*, 228 Mass. 487, 118 N. E. 168. There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay, and the reason for a distinction between the measure of liability in the case of a gratuitous bailment and gratuitous transportation is not obvious. It seems to us that the legislature was acting well within the limits of the police power in making a distinction between the degree of care to be exercised by the owner or operator of a motor vehicle toward a guest and that to be exercised toward one who pays for his transportation.

The question remains whether, upon the evidence, the jury could reasonably have found that the accident was caused by the defendant's heedless or reckless disregard of the rights of others. The defendant's family were in the car with him, which, so far as appears, was being operated at a reasonable speed and in a careful manner. The child on the rear seat called out and the defendant momentarily turned to look toward the right and immediately crashed into the car in front of him. There was no conflict in the testimony to be resolved by the jury. The probative effect

of these undisputed facts must be tested by the standard fixed by the statute. We do not think it could reasonably be said that the defendant's conduct, though perhaps negligent, was such as to indicate such a heedless or reckless disregard of the rights of others as to justify a verdict in favor of the plaintiff. The court was therefore right in directing a verdict for the defendant.

There is no error.

In this opinion MALTBIE and HINMAN, Js., concurred.

WHEELER, C. J. (dissenting). Upon the constitutionality of the statute I am obliged to differ with my brethren. They say, "the basis of the classification is the automobile." This is a misconception of the statute. The classification is not as to the automobile, but as to the guest in the automobile, taking away from him a right of action for ordinary negligence which the guest in every other mode of conveyance still enjoys under the law. In my opinion the statute deprives the guest in the automobile of the equal protection of the laws. What then does the equal protection of the law mean? We have held, under our Bill of Rights, that "no legislative Act is law, that clearly and certainly is obnoxious to the principle of equality in rights thus solemnly made the condition of all exercise of legislative power." *State* v. *Conlon*, 65 Conn. 478, 489, 33 Atl. 519; *State* v. *Porter*, 94 Conn. 639, 643, 110 Atl. 59. The equal protection of the laws guaranteed by the Fourteenth Amendment does not reach beyond the meaning of the declaration found in our Bill of Rights, "that all men when they form a social compact, are equal in rights," as we have construed this language. "Class legislation, discriminating

against some and favoring others, is prohibited" by this provision of the amendment, "but legislation which, in carrying out a public purpose, is limited in its application," "either in the objects to which it is directed, or by the territory within which it is to operate," "if within the sphere of its operation it affects alike all persons similarly situated, is not within" this provision "of the amendment." *Barbier* v. *Connolly,* 113 U. S. 27, 32, 5 Sup. Ct. 357; *Hayes* v. *Missouri,* 120 U. S. 68, 7 Sup. Ct. 350; *Truax* v. *Corrigan,* 257 U. S. 312, 333, 42 Sup. Ct. 124. The constitutional guaranty "does not prevent classification, but does require that classification shall be reasonable, not arbitrary, and that it shall rest upon distinctions having a fair and substantial relation to the object sought to be accomplished by the legislation." *Atchison, T. & S. F. Ry. Co.* v. *Vosburg,* 238 U. S. 56, 59, 35 Sup. Ct. 675; *Southern Ry. Co.* v. *Greene,* 216 U. S. 400, 417, 30 Sup. Ct. 287. He who assails the classification must assume the burden of showing that it does not rest upon any reasonable basis, and a court must assume the existence of any state of facts which can reasonably be conceived of as existing at the time of the enactment of the law. *Bachtel* v. *Wilson,* 204 U. S. 36, 41, 27 Sup. Ct. 243. The characteristics which will serve as a basis for a reasonable classification must show such a difference as to fairly justify the division into classes with separate legislation as to each. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts of the severed class. *Fountain Park Co.* v. *Hensler* (Ind.) 155 N. E. 465, 467. "A proper classification must embrace all who naturally belong to the class, all who possess a common disability, attribute or qualification, and there must be some natural and substantial difference germane to the subject and purposes of the legislation

between those within the class included and those whom it leaves untouched." *Fountain Park Co.* v. *Hensler* (Ind.) 155 N. E. 465, 467; *Chicago, M. & St. P. Ry. Co.* v. *Westby,* 102 C. C. A. 65, 178 Fed. 619; *People* v. *Beakes Dairy Co.,* 222 N. Y. 416, 119 N. E. 115.

We cite a few of the applications of these principles. In *Atchison, T. & S. F. Ry. Co.* v. *Vosburg,* 238 U. S. 56, 35 Sup. Ct. 675, a State statute imposed reciprocal burdens on both carrier and shipper, but provided that in the case of delinquency on the part of the carrier the shipper might recover an attorney's fee, but did not provide that in the case of the delinquency of the shipper the carrier might recover an attorney's fee, was held to deny the carrier the equal protection of the law granted by the Fourteenth Amendment. In *Quaker City Cab Co.* v. *Pennsylvania,* 48 Sup. Ct. Rep. 553, a State statute imposed a tax on the gross receipts of taxicab corporations engaged in domestic and foreign business where the receipts accrued from intrastate business, but did not impose a corresponding tax on individuals or partnerships engaged in a like business; it was held to be a violation of the equal protection clause of the Fourteenth Amendment. A Massachusetts statute imposed absolute liability upon telegraph companies for injuries caused by their poles, wires or apparatus, while not applying to others utilizing similar apparatus, was held unconstitutional in depriving telegraph companies of the equal protection of the laws. *Vigeant* v. *Postal Telegraph Cable Co.,* 260 Mass. 335, 157 N. E. 651. In *State* v. *Goodwill,* 33 W. Va. 179, 10 S. E. 285, a State statute which prohibited miners and manufacturers from paying in store orders was held a denial of the equal protection of the laws.

The guest statute separates gratuitous guests in automobiles from other gratuitous guests in every other

possible situation and in every other mode of convey-
ance or transportation. It cannot be seriously claimed
that any public purpose is served by this classification.
It does not tend to increase the safety of traffic in any
degree; on the contrary, the tendency would be the
reverse, since the transporting owner or operator of
the car would be relieved of liability to the guest for
his own ordinary negligence in its operation.

It merely relieves the operator and owner from his
own ordinary negligence. It does not affect all persons
similarly situated. Guests in other modes of convey-
ance are liable to injury through the ordinary negli-
gence of the transporting operator or owner of the
conveyance. The mere fact that the danger of injur-
ing the guest may be greater in the automobile than
in the other mode of conveyance does not afford a basis
for valid classification. That does no more than to
limit the right of action of a part of one class for the
benefit of someone who is not a member of either part
of the class. There could not well be a clearer viola-
tion of the equal protection of the law constitutional
provision.

There is another feature of this statute which re-
quires consideration. Cooley, in Constitutional Limi-
tations, Vol. 2 (8th Ed.) 809, says: "The legislature
may suspend the operation of the general laws of the
State; but when it does so the suspension must be
general, and cannot be made for individual cases or
for particular localities; . . . but everyone has a right
to demand that he be governed by general rules, and
a special statute which, without his consent, singles
his case out as one to be regulated by a different law
from that which is applied in all similar cases, would
not be legitimate legislation, but would be such an
arbitrary mandate as is not within the province of free
governments."

The Maryland court held in *Carozza* v. *Federal Finance & Credit Co.,* 149 Md. 223, 248, 131 Atl. 332: "The only restriction upon the power of the legislature to suspend the operation of a general law of the State is that the power when exercised must result in a suspension which is uniform, both in the privileges conferred and the liability imposed, in its application to all persons and property similarly situated and in like condition, within either the political territory or the class affected, and which shall not be arbitrary classification, but one supported by some sound and defensible reason inherent in the subject-matter."

The Illinois court in *Millett* v. *People,* 117 Ill. 294, 302, 7 N. E. 631, thus announced its adherence to this principle: " 'The rights of every individual must stand or fall by the same rule or law that governs every other member of the body politic, or land, under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. Were it otherwise, odious individuals and corporate bodies would be governed by one law; the mass of the community and those who made the law, by another; whereas a like general law, affecting the whole community equally, could not have been passed.' " See also *Atchison, T. & S. F. Ry. Co.* v. *Vosburg, supra; Giffith* v. *Connecticut,* 218 U. S. 563, 31 Sup. Ct. 132.

The only case which we find nearest to that before us is *Birmingham-Tuscaloosa Ry. & Utilities Co.* v. *Carpenter,* 194 Ala. 141, 69 So. 626. The statute in that case provided that the contributory negligence of the operator or driver of a motor vehicle shall be imputed to every occupant of it except passengers paying fare in a motor vehicle regularly used for public hire. The trial court ignored this statute upon the theory

that the same was unconstitutional. In the course of its opinion the court said: "The doctrine is well settled in this and most of the other States, as well as by the Federal courts, that the contributory negligence of one in charge, or control of, a train, car, or other vehicle, cannot be visited upon a person who is a passenger therein, whether for reward or not, unless the person so riding has charge or control of the vehicle, or over the person driving or operating the same." And thereafter the court held: "Section 34 not only discriminates against persons riding in motor vehicles in favor of those riding in all other vehicles under simlar conditions, but it discriminates between those who ride in a motor vehicle for hire. In other words, if a person rides in a motor vehicle which is regularly used for hire, he is not responsible for the negligence of the driver or operator; yet if he rides in one for hire he is responsible, unless said vehicle is regularly operated for hire. The section denies an equal protection of the law to all persons similarly situated, and is an unwarranted discrimination. . . . Of course, this constitutional guaranty does not forbid the legislature from making a reasonable classification in the operation of our laws; but such a classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed, and classification cannot be arbitrarily made without any such substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification."

The general rule of our common law gave to every gratuitous guest in an automobile an action against him who invited him to ride, for injuries suffered by him through the ordinary negligence of the operator of the automobile. This right of action cannot be taken away from the guest in the automobile by a law

applicable to the guest in the automobile but not to all other guests transported in other modes of conveyances upon the invitation of another. Privileges conferred by law cannot be taken away from the guest in the automobile while left to the guest in other forms of conveyance. Such a classification does not rest upon a fair or substantial basis; it does not affect alike all guests similarly situated. It is unreasonable in its differences and essentially arbitrary. It, therefore, denies to this plaintiff the equal protection of the law. For this reason, in my opinion, the statute was invalid, and the trial court was in error in directing a verdict.

In this opinion HAINES, J., concurred.