AMELIA POPHAM, Appellee, v. CORA B. CASE, Appellant.

No. 43265.

FEBRUARY 9, 1937.

REHEARING DENIED NOVEMBER 27, 1937.

Dutcher, Walker & Ries, for appellant.

Messer & Nolan, for appellee.

SAGER, J.—On October 18, 1933, the appellee, a woman of sixty-three years of age, was riding with the appellant in a car owned by the latter and driven by her. They were on their way from Iowa City to Fairfield to attend a women's club, appellee going with the appellant on the latter's invitation. Mrs. Case was driving a Chevrolet coupe and the parties to this action were the only occupants thereof and the only eyewitnesses to the attempt to pass the truck mentioned herein. At approximately thirty miles south of Iowa City, as they were proceeding southward on No. 161, a paved highway, they started down a hill of some considerable length and, as they reached the bottom, apparently attempted to pass a truck going in the same direction as the ladies were driving.

There is a dispute between appellee and appellant as to the movements of the car from the time it started down the incline. Appellee claims it was moving from fifty-five to sixty miles an hour when they attempted to pass the truck, and the appellant says it was going thirty-five to forty. Appellee says that the truck was over on the left-hand side of the road, leaving not sufficient room to pass, while the appellant says it was on its right-hand side of the road. Appellee says that no warning of the attempt to pass was given to the driver of the truck, whereas the appellant claims to have sounded her horn to signal her intention to pass. Appellee claims that before they attempted to pass she told appellant that they could not pass at that point and that she would have to wait, testimony which is again contradicted by Mrs. Case.

It appears from the record that there were other ladies leaving Iowa City on the same mission, who were traveling a few hundred feet ahead of the parties to this action, and one of them saw the car after it had passed the truck and before it went into the ditch, but not what happened before that time. From the record it appears that in attempting to pass the truck Mrs. Case hit what is designated as a "water sluice" and then turned to the right side of the pavement and back again to the left, over the shoulder and into the ditch. The movement of the car after it hit the sluice was described by both the appellee and one other witness as "weaving," though there is nothing definite as to the course of the car other than as has been indicated. The muddy tracks left by one or more wheels of the car after it returned to the pavement and before going into the ditch would seem to

indicate that, in attempting to pass the truck, appellant's car went off the pavement slab onto the muddy shoulder. Mrs. Case is not very clear as to the movements of the car before the accident happened, and makes her statement as to speed at which she was driving without having noticed the speedometer. She testified that she took no notice of the hill down which she was driving, or her movements especially, except that she was driving along the pavement and listening to the conversation of the appellee. She made no estimate of the distance she turned out to go around the truck, but stated it was the "usual distance when I drive out to go around a car"; that she turned out just as she usually did and took no note of the distance she was behind the truck when she attempted to pass. From the time she made the attempt she seems to have no recollection of what happened.

Appellee testified that the speed of the car was accelerated from the time it started down the hill toward the truck and that gas was fed to it unevenly, and that from the time the attempt to pass was made appellant seemed to have lost control of her car.

This substantially completes the record in the case, except for various plats and measurements and a description of the grievous injuries sustained by appellee when the car was overturned.

We have then the question whether, under the facts, appellant was guilty of such recklessness as to make her liable for the unfortunate injuries which her guest sustained. This court has too frequently passed upon the legal principles involved to call for any extended citation of authorities and we do not attempt it. It is sufficient to call attention to a few of them in which reference will be found to most of the others.

This court, in the recent case of Wright v. Mahaffa, 222 Iowa 872, 877, 270 N. W. 402, 405 (opinion by Justice Kintzinger), quoting from Siesseger v. Puth, 216 Iowa 916, 923, 248 N. W. 352, 356, on the question whether the issue of recklessness in cases of this kind is for the jury or court, said:

"The true rule seems to be, that * * * if from such evidence all minds could not reasonably agree on whether recklessness has been established or not, then the question should be submitted to the jury. In most * * * cases relied on by defendant as supporting the rule contended for, it was found by the court, as a

matter of law, that there was not sufficient evidence offered to make out a prima facie case. Under such condition it would naturally be the court's duty to direct a verdict. But if under the proven or admitted facts different minds might reasonably reach different conclusions, the question then is one of fact for the determination of the jury. [Citing cases.]''

The Siesseger case is one cited and relied on by both parties to this cause.

If then we seek to apply the rule thus announced we are confronted with the question, What is recklessness within the meaning of the statute as has been heretofore decided by this court? This quotation (Shenkle v. Mains, 216 Iowa 1324, at page 1329, 247 N. W. 635, 637, quoting from Neessen v. Armstrong, 213 Iowa 378, 383, 239 N. W. 56, 59) will make our position clear:

''This action is founded upon recklessness, which means more than negligence. It means proceeding without heed of or concern for consequences. See Siesseger v. Puth, 213 Iowa 164, 239 N. W. 46. In order for conduct to be reckless, within the meaning of the law, it must be such as to manifest a heedless disregard for or indifference to the rights of others. We find nothing in the record hereinbefore set out which evinces a heedless disregard of the rights of Neessen, who was seated by the side of the driver. We do not think that it could reasonably be said from the evidence that the defendant's conduct, though negligent it may have been, was such a heedless disregard of the rights of Neessen as to justify a verdict in favor of the administratrix. See Silver v. Silver, 108 Conn. 371, 143 A. 240, 65 A. L. R. 943; Ascher v. (H. E.) Friedman (Inc.), 110 Conn. 1, 147 A. 263. The mind is prone to look upon the result, but, unless the acts of the defendant would have been reckless within the meaning of the law without the resulting injury to Neessen, they are not reckless merely because Neessen lost his life.''

In the same volume, the case of Brown v. Martin, 216 Iowa 1272, at page 1275, 248 N. W. 368, 369 (opinion by Justice Donegan), thus announces the view of this court:

''Prior to its enactment [Code, sec. 5026-b1] the owner or operator of an automobile was liable for all damages sustained by a passenger not for hire in such automobile, which were due

to negligence of the driver. The effect of the amendment to the statute is to release the owner and operator from all damages to a guest who is a passenger not for hire, except in cases where the damages are caused as the result of the driver being under the influence of intoxicating liquor or because of the reckless operation of the motor vehicle by the driver. There is no claim that the defendant in this case was under the influence of intoxicating liquor, and the only question we have for consideration is whether the damage done to the plaintiff was caused by the defendant's reckless operation of his automobile. The effect of the change of the statute and the meaning of the term 'reckless operation' were first considered by this court in the case of Siesseger v. Puth, 213 Iowa 164, 182, 239 N. W. 46, 54.''

One more quotation will be sufficient, that from Welch v. Minkel, 215 Iowa 848, at page 851, 246 N. W. 775, 777 (Justice Kintzinger delivering the opinion) :

''The guest statute, known as Section 5026-b1 of the Code, has been considered by this court in several late cases. In the case of Siesseger v. Puth, 213 Iowa 164, [239 N. W. 46] this court has defined the meaning of the term 'reckless' to be something more than negligence. In this case the court made an exhaustive review of the authorities in which the term 'recklessness' has been construed. The authorities have been fully set out, and it will be unnecessary to do more than refer to that case here. This court has therein defined the term 'reckless' as meaning 'proceeding without heed of or concern for consequences.' To be 'reckless' one must be more than 'negligent.' Recklessness may include 'wilfulness' or 'wantonness,' but if the conduct is more than negligent, it may be 'reckless,' without being 'wilful' or 'wanton,' but to be reckless in contemplation of the statute under consideration, one must be more than negligent. Recklessness implies 'no care, coupled with disregard for consequences.' ''

In the light of this record, and these and other authorities which might be cited, we have been unable to reach any conclusion other than that the appellee has failed to make out a case of recklessness. The apparent confusion of Mrs. Case as she attempted to pass the truck, in our opinion could not be any more than negligence, if it amounted to that; neither would appellee's

statement (if we took her word as against that of Mrs. Case) that she (Mrs. Popham) expressed the view that the truck could not be passed where the attempt was made. In any event, Mrs. Case as the driver of the car, had to use her own judgment as to whether she could safely make the attempt to pass or not, and, unless her conclusion in that regard was so far unwarranted by conditions as they were then, or appeared to her to be, as to amount to recklessness, she would not be liable in damages to her guest. On the whole record we fail to see any elements of recklessness and think that appellant's motion for a directed verdict should have been sustained.

Appellant makes various complaints about the error of the court in overruling her motion to take from the consideration of the jury various specifications of recklessness, which need not be considered, being disposed of by what we have already stated. Neither is it necessary to analyze her complaint about the instructions.

■■■ While it may not be necessary to a determination of the questions presented by this appeal, the writer of this opinion wishes to express his disapproval of the use of that mongrel expression which finds place in the pleadings: "and/or".

We do not stop to cite quotations upon this subject, from distinguished jurists, which appear in appellee's brief, but it does seem to us that in pleading the specifications of recklessness or negligence, the party who brings the action should have a tolerable idea whether he wishes to charge this or that specification, and not subject the court to the labor of deciding whether it is this or something else.

It follows, therefore, that this case is reversed.—Reversed.

RICHARDS, C. J., and MITCHELL, ANDERSON, DONEGAN, PARSONS, HAMILTON, and STIGER, JJ., concur.